30033. MARYLAND CASUALTY COMPANY *et al. v.* TEELE.

DECIDED DECEMBER 3, 1943.

262

*W. J. Wallace, Will Gunn*, for plaintiffs in error.
*Bloodworth & Bloodworth, E. P. Johnston*, contra.

MacIntyre, J. The part of the Code, § 53-208, as amended, applicable to this case is as follows: "Any ordinary who by himself or clerk shall fail to post in his office the required notice pertaining to the application, or who shall issue a license in violation of the time provision, or who shall knowingly grant a license without the required consent or without proper precaution in inquiring into the question of minority, or who shall issue a license for the marriage of a female to his knowledge domiciled in another county, shall forfeit the sum of $500 for every such act, to be recovered at the suit of the father or mother, if living, and if not father or mother, the guardian or legal representative of either of such contracting parties. . . A recovery shall be had against the offending ordinary and his bondsmen, and from such recovery a reasonable attorney's fee, to be fixed by the presiding judge trying the case, shall be paid to the attorney representing the person bringing the suit, and, after the payment of court costs, then one-third of the remainder of said recovery shall be paid to the person bringing the suit and the remaining two-thirds shall be paid to the county educational fund of the county of such ordinary's residence. Provided, that no recovery shall be had for any alleged violation involving marriages in which both parties are more than eighteen years old." Section 53-201 provides in part: "Marriage licenses shall be granted by the ordinary, or his clerk, of the county where the female resides." Section 53-202 reads: "A marriage license shall be issued on written application therefor made by the person seeking such license, verified by oath of the applicant, which application shall state that there is no legal impediment to the marriage, and shall give the full name of the proposed husband, with date of birth, present address, and name of his father and mother if known, and if unknown shall so state, with present name of the proposed wife with date of her birth and present address, with name of her father and mother if known, and if unknown shall so state, and shall be supported by affidavits of two reputable citizens of the United States as to truth of recitals in said application." Section

53-203 reads.: "Such application shall be filed in the office of the ordinary before a marriage license shall be issued, and shall remain in the permanent files in the office of the ordinary, and may be used as evidence in any court of law under the rules of evidence made and provided in similar cases." Section 53-204 is as follows: "In cases where the parties applying for a license shall not have reached the age of 21 years, their ages to be proved to the ordinary as hereinafter provided, the ordinary immediately upon receiving the application, shall post in his office a notice giving the names and residences of the parties applying therefor and the date of the application; except that where the parents or guardian of the female appear in person before the ordinary and consent in writing to the issuance of the license, the posting may be dispensed with." Section 53-205 reads: "In cases where notice of the application is required to be posted, no license shall be issued earlier than five days following the date of the application therefor, within which five-day period objections to the proposed marriage may be entered; except that in cases of an emergency or extraordinary circumstance the ordinary may authorize the license to be issued at any time before the expiration of the five days." Section 53-206, is as follows: "Proof of majority. Notice to be posted when parties fail to establish majority. When the applicant claims that the parties are 21 years of age or over, the ordinary to whom application is made shall satisfy himself that the applicant's contention as to their ages is true. If the ordinary does not know of his own knowledge that both parties for whom a marriage license is sought are 21 years of age, or over, he shall require applicants to furnish birth certificates or, in lieu thereof, affidavits from at least two persons showing the ages of both parties to be 21 years or over; and upon failure of applicant to convince the ordinary that both parties are of such age, the ordinary shall post notice of said application for the period of five days, as hereinbefore provided." Section 53-207 reads: "Ordinary to inquire as to ages. No license for female under 18 except by parents or guardian's written consent. The ordinary shall inquire as to the ages of all persons for whom marriage licenses are asked; and if there shall be any grounds of suspicion that the female is under the age of 18 years, the ordinary shall refuse to grant the license until the written consent of the parents or guardian, if any, controlling such minor, shall be produced and

filed in his office." Section 53-208, before the amendment of 1939 (first quoted above), concluded with the words: "shall forfeit the sum of $500 for every such act, *to be recovered at the suit of the clerk of the superior court, and added to the educational fund of the county.*" (Italics ours.) Of course, as has already been shown, the section was amended by the act of 1939, so as to permit "the father or mother, if living, and if not father or mother, the guardian or legal representative of either of such contracting parties" to sue for the penalty.

The brief of evidence contains this statement: "It was stipulated between counsel that Virginia Teele was actually sixteen years old at the time of the marriage, although the ordinary was informed she was nineteen." The answers of the defendants admit the averments of each count of the petition that Mrs. L. J. Hancock was a resident of Crawford County, and was the ordinary of that county, and that Maryland Casualty Company was the surety on her official bond. The uncontradicted evidence shows that Virginia Teele was the daughter of B. F. Teele, and was in her sixteenth year and was a resident of Bibb County when the marriage license was granted, and the marriage ceremony performed by the ordinary at her residence in Crawford County; that the ordinary issued the license and performed the ceremony without posting the required notice of the application for the marriage license, without the knowledge or consent of the parents of Virginia, without requiring the applicants to furnish birth certificates, and without requiring, in lieu of the birth certificates, the affidavits of at least two persons showing the ages of both the parties.

On direct examination, Mrs. L. J. Hancock testified in part as follows: "I am the ordinary of Crawford County. I have been ordinary over there thirteen years, last April. . . They [Melvin Whittington and Miss Virginia Teele] came to my house. . . I had retired. . . It was between eleven and twelve o'clock [at night]. . . I went down stairs and . . said, 'How old is the young lady?' They said, 'nineteen years old.' I said, 'Where do you live?' They said, 'In Crawford County.' This little girl was named Teele, they said. I said, 'Well, there is some Teeles in this county. Do you live in the upper part of the county?' They said, 'No, the sixth district, Roberta, Route 2;' and they just kept repeating it. I said, 'you are sure she is nineteen?' You can't tell

a girl this day and time with their short dresses and socks. I certainly didn't doubt her being nineteen years old and . . the young man being twenty-one. I wouldn't have thought of marrying her if I had thought she was just sixteen years old. . . There was nothing about the appearance of Virginia Teele to indicate that she was less than nineteen years old. . . There was nothing to indicate that she was not a resident of Crawford County. I had no idea but what they were telling the truth. . . There was nothing in the appearance of Mrs. Rosa Whittington . . that would indicate to me that she was telling a story." On cross-examination she testified in part as follows: "On this [the application for marriage license] it has 'consent or waiver of parents or guardian.' I did not see that because I did not turn it over. . . They were married on February 6th. . . *I did not ask her what month and year she was born. I should have done that, but I didn't ask her that. The application has on it, 'date of birth,' but I didn't ask her that* [Italics ours]. . . I saw the little girl come in here a while ago. She looks like she is nineteen now to me. I can't tell when anybody is nineteen or thirty. *I didn't ask them to give me a birth certificate because I thought they were telling the truth."* Melvin Whittington testified in part: "I . . . married Virginia Teele. . . I was seventeen years old at that time. I went to Roberta in company with Virginia Teele and Mrs. Rosa Whittington . . to Mrs. Hancock's house. . . Miss Teele and I went to Jeffersonville about two weeks before this. . . He [the ordinary] would not marry us because he said we were too young, and he said Mr. Teele had written . . telling him not to marry us. My sister-in-law was with us on that trip, the same person that went with us the last time. . . I did not tell her [Mrs. L. J. Hancock] I had already been to Jeffersonville and couldn't get married. . . My wife and I have not separated; we are very happily married." Mrs. Rosa Whittington testified in part: "Mrs. Hancock asked me the age of Virginia Teele and I told her it was nineteen. I swore here it was nineteen. He [Melvin Whittington] told her [Mrs. Hancock] . . . he was twenty-one. . . Mrs. Hancock asked us several times about the ages. . . They told Mrs. Hancock that Virginia Teele lived in Crawford County. Mrs. Virginia Whittington [Virginia Teele] testified in part as follows: "I signed this paper headed, 'Application

-for marriage license.' Mrs. Hancock had done all this writing in there at the time I signed it. She asked us if we swore it, and we told her we did. She asked my age, and I told her I was nineteen, and she asked Melvin his age, and he told her he was twenty-one. She asked me where my father and mother lived, and I told her they lived in Roberta, Route 2. I told her that was the post-office address in Crawford County of my father and mother. . . She said she knew some Teeles in Crawford County, and I told her I was not kin to them. She didn't say anything to that, as I remember. I tried to keep a straight face when I was talking to her about my age. I don't remember how many times she asked me how old I was, but it was a good many. I went to Jeffersonville and that ordinary . . would not perform the ceremony. He said Daddy had written him not to marry me; and then I decided to get ahead of my daddy and go to Crawford County. I live in Bibb County, and I lived there at the time of this marriage. My father lived in Bibb County and my husband lived in Bibb County at that time." As to Virginia Teele, the application for the marriage license contained, among others, the following questions and answers: "Residence? Roberta, R. 2 Crawford County, Ga. Date of Birth—Age? 19 years. Any legal impediment? No. Full name of father? B. F. Teele. Full name of mother? Mrs. Frances Louise Teele. Parents' residence." No answer. The application was signed and sworn to by the applicants. At the bottom of the application was this affidavit: "I swear this young lady is nineteen years old. [signed] Mrs. Rosa Whittington." On the back of the application was the printed form [which the ordinary says she overlooked] of the "consent and waiver of parents or guardian." This was not signed. There was also on the back of the application the printed form for two witnesses to sign, in accordance with the requirements of the Code, § 53-206, supra. This form was likewise not signed.

The uncontradicted evidence shows that the ordinary of Crawford County issued a marriage license to Melvin Whittington and Virginia Teele in Crawford County, and performed the marriage ceremony in that county at a time when Virginia Teele was sixteen years of age and was a resident of Bibb County, without filing any notice of the application for the marriage license as required by the Code, § 53-204. The Code, § 53-205, shows the purpose of posting

the notice by providing that when the notice of application is required to be filed "no license shall be issued earlier than five days following the date of the application therefor, *within which five-day period objections to the proposed marriage may be entered."* (Italics ours.)    Section 53-206, headed "Proof of majority," etc., specifies how such proof shall be made.    It provides that, "if the ordinary does not know of his own knowledge that both parties for whom a marriage license is sought are 21 years of age, or over, he shall require applicants to furnish birth certificates or, in lieu thereof, affidavits from at least two persons showing the ages of both parties to be 21 years of age, or over; and upon failure of applicant to convince the ordinary that both parties are of such age, the ordinary shall post notice of said application for the period of five days, as hereinbefore provided."    The uncontradicted evidence shows that there was no compliance with the requirements of this Code section.    Section 53-207 provides that "if there shall be any grounds of suspicion that the female is under the age of 18 years, *the ordinary shall refuse to grant the license until the written consent of the parents or guardian, if any, controlling such minor, shall be produced and filed in his office."*    (Italics ours.) The uncontradicted evidence likewise shows that the requirements of this section were not met.    Unquestionably the ordinary did not know of her "own knowledge that both parties for whom a marriage license" was sought were twenty-one years, or over.    Furthermore, we are of the opinion that there were some grounds of "suspicion that the female" was "under the age of eighteen years." In this connection, it may be stated that the ordinary testified: "I did not publish any notice.    I didn't think you had to do that after eighteen years old."    Furthermore, the ordinary referred to Virginia Teele as "the little girl," and repeatedly inquired as to her age.    Again, the ordinary accepted the application for the marriage license notwithstanding the fact that it did not show Virginia Teele's *date of birth,* as required by the Code, § 53-202. If the ordinary had asked the parties present the date of Virginia's birth, instead of accepting their statements that she was nineteen years old, it is not unlikely that the young people would have disclosed the untruthfulness of their statement that she was nineteen years old.    It is also true that the application for the marriage license did not show the address of Virginia's father and mother, as required by said Code section.

In view of the many safeguards of the law thrown about issuing marriage licenses to minors, we are satisfied that it was never intended by the lawmakers that an ordinary could successfully defend against an action brought under the Code, § 53-208, as amended, to recover the penalty therein provided, by showing that two young people, whose ages the ordinary evidently did not know, accompanied by the twenty-year-old sister-in-law of the prospective groom, came to her home late at night, and procured a marriage license because all three of the young people falsely swore that the girl was nineteen years old when she was only sixteen, and because the ordinary, from the appearance of the girl, believed the false statement of the three young people as to her age, and, from the appearance and correct demeanor of the girl and the other two parties, believed that they were all three telling the truth.

We hold that the evidence demanded the verdict for the plaintiff, and that the court's judgment so directing the verdict was not error.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*